

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB -3 PM 3:19

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: THE MATTER OF PARKER DRILLING AND OFFSHORE USA, L.L.C., AS OWNER AND OPERATOR OF PARKER RIG 14-J PRAYING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY FOR THE INCIDENT OF SEPTEMBER 11, 2003 AT CHANDELEUR AREA BLOCK 27 | CIVIL ACTION<br><br>No. 03-2611<br><br>SECTION "C"(5) |

### ORDER AND REASONS

Third-party defendant C.B. Gear moves for summary judgment of the claims filed against it by Parker Drilling USA, L.L.C. ("Parker") under Rule 56 of the Federal Rules of Civil Procedure. Having considered the motion, the opposition thereto, the exhibits, and the law, the Court hereby DENIES C.B. Gear's motion.

I.      Background

The Parker Rig 14-J, which collapsed on September 11, 2003, was outfitted with a "jacking system" that was designed by Baker Marine ("Baker").[1] The jacking system comprises the whole body of gears, jacks and motors that controls the upward and downward movement of the legs and deck on the rig. Generally speaking, the jacking

---

[1] In Parker's "Response to C.B. Gears Statement of Uncontested Facts and Further Uncontested Facts Submitted by Parker Drilling Offshore USA, L.L.C. and Underwriters," Parker states that it stipulates to the fact that Baker Marine designed the jacking system, even though Parker notes that is "technically incorrect."

1



system is powered by hydraulic motors which turn a series of interrelated gears that are connected to tracks (called "racks") which run along the legs of the rig. The turning of the gears, powered by the motors, moves the legs up and down. One of these gears, specifically a 7-tooth ¾ pitch pinion gear, fractured on the day of the collapse and it is this fracturing that Parker argues caused the 14-J's collapse. Baker allegedly subcontracted with C.B. Gear in 1998 to build eight new pinion gears which were integrated into its jacking system. When Parker's experts determined that the fractured pinion gear caused the collapse of the rig, Parker amended its complaint to bring in Baker and C.B. Gear as third-party defendants.[2] Parker asserted claims of negligence and strict products liability against C.B. Gear for defective design of the pinion gear.

In 1998, when Baker ordered eight 7-tooth ¾ pitch pinions to be manufactured by C.B. Gear, C.B. Gear in turn subcontracted with Precision Flamecutting and Steel ("Precision") to cut the teeth of the gear with a torch. According to C.B. Gear's motion, Precision was not able to make the cuts the way Baker had ordered, because "the root of the gear tooth was too close to the shaft."[3] In other words, to be able to successfully cut the gear teeth, Precision concluded that it needed the shaft to be thinner in diameter. It was decided to machine the shaft down to a smaller diameter. Precision was then able to cut the teeth into the gear. Subsequent to Precision's cutting the teeth, a sleeve was placed over the end of the shaft, in order to effectively return the diameter of the shaft to its original size. The sleeve is initially heated, placed over the shaft and then allowed to cool. As the sleeve cools, it contracts so that it fits snugly over the shaft. As C.B. Gear notes, "Sleeving the journal (or shaft) necessarily made the weight-bearing part of the

---

[2] (Rec. Doc. 152.) Parker additionally brought in third-party defendants Mechanical Technology, Inc. and Precision Flamecutting and Steel, L.P. Those parties are not relevant to this motion.
[3] C.B. Gear Motion at 4-5.

2

shaft small in diameter, because the sleeve is only used as a spacer to bring the shaft back to the original diameter."[4]

Parker's experts claim that the process of machining the journal to a smaller diameter and then fitting it with a sleeve to restore its diameter made the pinion gear weaker.[5] More specifically, they claim that the sleeving process made the gear capable of bearing less weight and wearing out more quickly.[6] According to Parker's experts, the pinion gear was a component of the motor that was mounted on the front of the starboard aft leg on the day of the accident. They conclude that the 14-J collapsed because this pinion gear, weakened by C.B. Gear's sleeving process, gave way under the weight of the rig.

II.     First Claim

C.B. Gear argues that summary judgment is appropriate because they claim that Parker "cannot prove that C.B. Gear made the gear that failed in the accident."[7] This is a pure question of fact, and, as noted at oral argument, Parker has come forward with specific facts refuting C.B. Gear's claim. Thus, summary judgment is inappropriate as to this claim.

III.    Second Claim

---

[4] Id. at 5.
[5] Expert Report of D. Scott Harding at 3.
[6] Id.
[7] C.B. Gear Motion at 10.

3

C.B. Gear argues that there is no evidence of a *manufacturing* defect in the pinion gear at issue. Parker acknowledges that they do not assert a claim for manufacturing defects and concedes C.B. Gear's argument.[8] There is thus no claim that the pinion gear contained a manufacturing defect.

IV.   Third Claim

C.B. Gear claims that, to the extent the pinion gear contained a design defect, it is insulated from liability by virtue of the fact that it is a "component part manufacturer." C.B. Gear relies on § 5 of the Restatement (Third) of Torts: Products Liability, which shields manufacturers of non-defective component parts from liability when the part they manufacture gets integrated into another product which causes harm, unless the manufacturer substantially participates in the integration of the component part.. In support of this claim, C.B. Gear argues that Baker "approved all design changes to the drive pinion gear, i.e. the sleeving" and then integrated the pinion gear into their jacking system on the 14-J.[9] Parker argues in opposition that the "component parts doctrine" is not applicable in a case where the component part itself is defective and that there exist clear issues of fact on that issue. Furthermore, Parker contests the notion that C.B. Gear manufactured the pinion gear according to Baker's specifications. Also disputed is whether C.B. Gear's initiation in altering the design amounts to substantial participation in the integration of the component part. The Court is persuaded that Parker is correct.

---

[8] Parker Opposition Motion at 4.
[9] C.B. Gear Motion at 13.

Federal maritime law governs this action. See Ali v. Offshore Co., 753 F.2d 1327, 1332 n. 11 (5th Cir. 1985). The doctrine of strict liability has been recognized as part of the federal maritime law. See Vickers v. Chiles Drilling Co., 822 F.2d 535, 538 (5th Cir. 1987). Generally speaking, federal maritime law applies general common law principals of products liability. See, e.g., Ocean Barge Transport v. Hess Oil Virgin Islands, 726 F.2d 121 (3rd Cir. 1984)("[I]t is no longer seriously contested that the legal theories of strict liability in tort now so prevalently applied on land can be applied to suits in admiralty."); Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co., 565 F.2d 1129, 1134 (9th Cir. 1977). Numerous courts have embraced § 402 of the Restatement (Second) of Torts as "the best expression of the [doctrine of strict liability] as it is generally applied." Ocean Barge Transport, 726 F.2d at 123 (collecting cases). The Restatement (Third) of Torts: Products Liability has been referenced by courts applying federal maritime law as well. See Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 879 (1997); Smith v. Mitlof, 198 F.Supp.2d 494, 502 (S.D.N.Y 2002).

The component parts doctrine, as articulated by § 5 of the Restatement (Third) of Torts: Products Liability, states the following:

> One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if:
>
> (a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or
> (b)(1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and
>     (2) the integration of the component causes the product to be defective, as defined in this Chapter; and
>         (3) the defect in the product causes the harm.

Restatement (Third) of Torts § 5 (1998).

Thus, in order to succeed on a motion for summary judgment, C.B. Gear would need to satisfy the Court first, that the component itself is *not defective* as a matter of law *and* second, that it unquestionably did not substantially participate in the integration of the component into a defective product that caused harm.

Regarding design defects, the Restatement (Third) of Torts: Product Liability notes:

> A product . . . is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe. . . .

Restatement (Third) of Torts § 2 (1998).

Thus, to establish the existence of a design defect, it must be shown that "the manufacturer placed a product into the stream of commerce that was unreasonably dangerous for a foreseeable use." McLennan v. American Eurocopter Corp., Inc. 245 F.3d 403, 431 (5th Cir. 2001).

C.B. Gear's motion does not address the issue of whether the pinion gear itself was defective.[10] Instead C.B Gear devotes nearly the entirety of this part of the motion to arguing that it did not "substantially participate in the integration" of the pinion gear into

---

[10] Each of the cases cited by C.B. Gear in support of their contention that they are a component parts manufacturer is distinguishable on this ground alone. See Davis v. Komatsu America Industries Corp., 42 S.W.3d 34, 39 (Tenn. 2001)("There is no allegation by plaintiffs that the [component part at issue] was in any way defective. . ."); Davis v. Dresser Industries, Inc., 800 S.W.2d 369, 370 (Tex.App. 1990)("The summary judgment proof shows that the two component parts involved in this appeal were not defective."); Childress v. Gresen Manufacturing Co., 888 F.2d 45 (6th Cir. 1989)(finding the defendant component manufacturer was not liable, stating, "We agree with the district court that this case is distinguishable from [a Michigan State Court case] because in [that case] there was an actual defect in the component part . . .")

Baker's jacking system. The *only* time C.B. Gear even mentions the issue of defectiveness in this part of their motion is in the following statement: "Moreover, if there was a defective condition in the Baker Marine Jacking System, *which is denied*, the defect was not in the 7-tooth ¾ pitch sleeved pinion, but rather the application of that pinion into the jacking system."[11]

There is sufficient evidence in the record that the gear itself was in fact defectively designed for its purpose in the jacking system and it was at least foreseeable to C.B. Gear that the gear would be incorporated into Baker's rig. C.B. Gear's own motion contains numerous references to conversations between C.B. Gear and Baker before the gear was sleeved concerning whether or not the gear would be "strong enough to carry the intended load if it were sleeved."[12] Further, as counsel for Parker pointed out at oral argument, C.B. Gear knew it was constructing gears for Baker which was in the business of producing jacking systems for rigs. The evidence that the alterations in the pinion weakened the gear for its intended purpose and that C.B. Gear knew that the gear would be used on a jacking system creates a material issue of fact as to whether the pinion was defective in design.

Moreover, there remain disputed factual issues regarding whether C.B. Gear "substantially participate[d] in the integration" of the gear into the jacking system. Specifically, Parker points to evidence that C.B. Gear initiated the change in the design which Parker alleges created the defect.[13] The extent of C.B. Gear's participation in the design of the gear as well as their knowledge about how it was to be used must be

---

[11] C.B. Gear Motion at 18 (emphasis added).
[12] C.B. Gear Motion at 5.
[13] Parker Opposition Motion at 7.

7

assessed by the jury to determine whether C.B. Gear "substantially participate[d] in the integration of the gear into the jacking system."[14]

V.      Fourth Claim

C.B. Gear asserts that Parker was comparatively negligent in this case which "absolves [C.B. Gear] from liability, in whole or part."[15] Indeed, C.B. Gear claims Parker's "misuse of the jacking system and knowledge of the alleged defective sleeved pinion constitutes active negligence for which it should be held 100% comparatively at fault." It then proceeds to detail the various ways it contends Parker's negligence contributed to the collapse of the 14-J.

As noted at oral argument, there remain genuine issues of fact regarding Parker's negligence and the proximate cause of the accident. The Court could not possibly apportion fault[16] at this stage given the existence of those unsettled questions of material fact.

---

[14] At oral argument, C.B. Gear referred to Childress, 888 F.2d 45, in support of its claim that it did not "substantially participate" in the integration of the gear into the jacking system. In that case, however, the component part manufacturer did not initiate any change in the design of the component part at issue.
[15] C.B. Gear Motion at 18.
[16] Federal maritime law applies the doctrine of "pure" comparative negligence to reduce recovery against the manufacturer in a strict products liability case. Lewis v. Timco, Inc., 716 F.2d 1425 (5th Cir. 1983).

IV.     Conclusion

For the foregoing reasons, IT IS ORDERED that C.B. Gear's Motion for Summary Judgment under Rule 56 be DENIED.

New Orleans, Louisiana, this 3rd day of February, 2006.

```
        _____
              HELEN G. BERRIGAN
           UNITED STATES DISTRICT JUDGE
```